# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 19, 2007          Decided June 26, 2007

No. 04-5450

MICHAEL A. THOMPSON,
APPELLANT

v.

DRUG ENFORCEMENT ADMINISTRATION, ET AL.,
APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 04cv01118)

———

No. 05-5082

CHARLES E. THOMPSON,
APPELLANT

v.

GORDON R. ENGLAND, SECRETARY OF THE NAVY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00295)

———

*Amy L. Koch*, Student Counsel, argued the cause as *amicus curiae* in support of appellant in No. 04-5450. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *David Arkush,* Supervising Attorney.

*Emily Hughes*, Student Counsel, argued the cause as *amicus curiae* in support of appellant in No. 05-5082. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *David Arkush*, Supervising Attorney.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee in Nos. 04-5450 and 05-5082. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *W. Mark Nebeker*, Assistant U.S. Attorneys. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In these two cases, we consider motions by two prisoners for leave to file appeals *in forma pauperis*. The Prison Litigation Reform Act requires that we deny their motions if on three or more occasions they have brought an action or appeal in federal court that was "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). Reviewing the litigation histories of the two prisoners, we find that neither has undertaken three or more such actions or appeals and therefore grant both leave to proceed *in forma pauperis*.

**I.**

In enacting the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), "Congress's principal intent was to reduce frivolous litigation by prisoners challenging conditions of their confinement." *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 (D.C. Cir. 1998). Senator Robert Dole, one of the PLRA's principal sponsors, noted that "[p]risoners have filed lawsuits claiming such grievances as insufficient storage locker space, being prohibited from attending a wedding anniversary party, and yes, being served creamy peanut butter instead of the chunky variety they had ordered." 141 CONG. REC. 14,570, 14,570 (1995). These types of "frivolous lawsuits," Senator Dole explained, "waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population." *Id.* at 14,571.

To weed out such cases, Congress (1) imposed an exhaustion requirement for challenges to prison conditions brought under 42 U.S.C. § 1983, *see* 42 U.S.C. § 1997e(a); (2) created a screening procedure, referred to as section 1915A review, under which courts must dismiss before docketing any prisoner complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . . seeks monetary relief from a defendant who is immune from such relief," 28 U.S.C. § 1915A(b); and (3) restricted federal court discretion to allow prisoners to file suit without paying filing fees, that is, to proceed *in forma pauperis* (IFP). The PLRA accomplishes this latter restriction in two ways. First, prior to the PLRA, federal courts could exempt indigent prisoners from paying filing fees. *Ibrahim v. District of Columbia*, 208 F.3d 1032, 1033 (D.C. Cir. 2000). Under the PLRA, however, prisoners whom courts allow to proceed IFP must pay the entire fee over time, though they need not pre-pay in full for the action or appeal to commence. 28 U.S.C. § 1915(a), (b).

Second—and central to the issues before us—the PLRA limits courts' discretion to grant IFP status to prisoners with a track record of frivolous litigation. Known as the "three strikes" provision, it requires that:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Michael Thompson and Charles Thompson, both prisoners subject to the PLRA, move for leave to appeal IFP. *See* FED. R. APP. P. 24(1)(5). Because neither contends that he is "under imminent danger of serious physical injury," the sole question before us is whether either of the two prisoners has accrued three strikes prior to this appeal.

Michael Thompson has seven actions and appeals that could qualify as strikes. One is the case he seeks to appeal here—a suit against the U.S. Drug Enforcement Agency under the Freedom of Information Act, 5 U.S.C. §§ 552 et seq., and the Privacy Act, 5 U.S.C. § 552a. The district court dismissed that complaint in part on *res judicata* grounds and in part for failure to exhaust administrative remedies. *Michael A. Thompson v. DEA*, No. 04-1118, slip op. at 2–4 (D.D.C. Oct. 28, 2004). Before the instant action and appeal, Michael Thompson had,

according to the record before us, filed the following federal actions and appeals:

- a suit against the St. Louis Police Department dismissed as frivolous by the Eastern District of Missouri;
- an appeal of that dismissal to the Eighth Circuit in which the judgment was affirmed;
- a FOIA suit against the Department of Justice that the District Court for the District of Columbia dismissed on grounds unascertainable from the record before us;
- an appeal of that case to this Court in which the judgment was affirmed;
- a *Bivens* action dismissed for lack of subject matter jurisdiction by the District Court for the Eastern District of Missouri; and
- an appeal of a second FOIA action in which this court affirmed the district court's grant of summary judgment against Michael Thompson (the record contains no information about the underlying district court proceedings).

Charles Thompson has four potential strikes. First, in our district court, he sued the Secretary of the Navy under the Privacy Act and the Administrative Procedure Act, 5 U.S.C. § 706. The district court dismissed the former for lack of subject matter jurisdiction and granted summary judgment for the government on the latter. *Charles E. Thompson v. Danzig*, No. 03-0295, slip op. at 2 (D.D.C Feb. 9, 2005); *Charles E. Thompson v. Danzig*, No. 03-0295, slip op. at 7 (D.D.C Mar. 31, 2004). Prior to the instant action and appeal, the record shows that Charles Thompson brought three federal actions:

- a suit against DeKalb County, Georgia, dismissed as frivolous by the Northern District of Georgia;

- an appeal thereof to the Eleventh Circuit that a single circuit judge hearing the IFP motion declared to be frivolous; and
- another suit in the District Court for the Northern District of Georgia, referred to as the *Veterans Service Board* case, in which the court dismissed Thompson's complaint in part on statute of limitations grounds and in part for lack of standing.

Together, these two motions present five unresolved questions, which we shall consider in turn:

1) Do prisoners moving to proceed IFP bear the burden of proving their eligibility for IFP status?
2) Do appellate affirmances of cases dismissed as frivolous count as strikes?
3) Do actions and appeals in which the court lacks jurisdiction count as strikes?
4) Do actions and appeals defeated by a failure to exhaust count as strikes?
5) Do actions dismissed pursuant to section 1915A's screening procedure automatically count as strikes?

In *Butler v. Department of Justice*, No. 05-5171, also decided today, we answer two additional questions: Do dismissals for failure to prosecute count as strikes? When should courts exercise their discretion to deny IFP privileges to prisoners not barred by the PLRA's three strikes provision?

To help us resolve these issues, we appointed amici for Michael Thompson, Charles Thompson, and James Butler. The Court is grateful for their service.

**II.**

Before addressing the contested issues, we note several areas of agreement. To begin with, both sides appear to agree that actions containing at least one claim falling within none of the three strike categories—such as Michael Thompson's action currently on appeal—do not count as strikes. We too agree. Section 1915(g) speaks of the dismissal of "actions and appeals," not "claims." Indeed, it would make no sense to say—where one claim within an action is dismissed for failing to state a claim and another succeeds on the merits—that the "action" had been dismissed for failing to state a claim. *Cf. Lira v. Herrera*, 427 F.3d 1164, 1173 (9th Cir. 2005) ("[W]hile 'action' in the PLRA refers to the case as a whole, the statute consistently uses the term in a manner that contemplates dismissing the *entire* action only if the *entire* action fails to meet statutory standards. When some claims are valid and others are not, the usual procedural norm—that when a complaint has both good and bad claims, only the bad claims are 'dismissed,'—prevails.") (citation omitted)).

Both sides also agree that the district court dismissals in the two cases on appeal here could not possibly count as strikes until the respective appeals are exhausted. Again, we agree. Although section 1915(g) nowhere expressly states that dismissals must be final to count as strikes, we think it fairly implied. A contrary rule would, within those narrow set of cases in which the third strike is appealed, effectively eliminate our appellate function. Had Congress intended such an unusual result, we expect it would have clearly said so. *See Jennings v. Natrona County Det. Ctr. Med. Facility*, 175 F.3d 775, 780 (10th Cir. 1999) ("Congress did not intend to 'freeze out meritorious claims or ossify district court errors.'" (quoting *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996) (holding same))); *see also Campbell v. Davenport Police Dep't*,

471 F.3d 952, 953 (8th Cir. 2006) (same). *But see Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002) (holding that a dismissal in the district court may be considered a third strike before appeal, but only after the appellate court decides whether "the district court might have erred," an approach the government here describes as "creat[ing] more work than is appropriate for either the courts or the litigants to resolve a request for IFP privileges," Appellee's Br. 24).

Both prisoners also concede—properly in our view—that they have one strike. In each of those cases, the district court expressly found the action to be frivolous. *Michael A. Thompson v. St. Louis County Police Dep't*, No. 93-1457 (E.D. Mo. July 30, 1993); *Charles E. Thompson v. DeKalb County*, No. 03-964 (N.D. Ga. July 3, 2003). In a third case, Charles Thompson brought an appeal in the Eleventh Circuit, where his IFP motion was assigned to a single appellate judge, who then denied Thompson's motion and declared the appeal frivolous. In support, the judge cited 28 U.S.C. § 1915(e)(2)(B)(i), which requires federal courts to dismiss actions and appeals brought by prisoners if at any time they determine the action or appeal to be frivolous. The judge then gave Charles Thompson thirty-five days to file a motion for reconsideration, and when that time passed without a response, the Eleventh Circuit dismissed his appeal for want of prosecution.

Amicus for Charles Thompson argues that this appeal should not count as a strike because the Eleventh Circuit formally dismissed it for failure to prosecute, rather than for frivolousness. This is hypertechnical. But for the judge declaring it frivolous, Charles Thompson's appeal would have gone forward. We therefore regard this case as Charles Thompson's second strike.

**III.**

We turn to the five questions presented by these motions.

*Burdens of Production and Persuasion*

With respect to one of Michael Thompson's prior cases, *Michael A. Thompson v. Department of Justice*, No. 96-1208 (D.D.C. May 31, 1996), the only record evidence about the case (the PACER docket report) states that the action was dismissed but provides no information as to the grounds of dismissal, much less whether the judge regarded the action as frivolous. Insisting this case should not count as a strike, amicus for Michael Thompson argues that the defendant—which in this and most federal court prisoner cases is a government body—bears the burden of producing evidence capable of convincing the court that a prior action or appeal was dismissed on one of section 1915(g)'s enumerated grounds. The government acknowledges that it bears the initial burden of producing evidence of three dismissals, but contends that, once it has done so, the mere fact of dismissal should raise a presumption that the dismissal was a strike, unless the prisoner produces evidence to the contrary.

The question whether to count an unexplained dismissal as a strike may be thought of either in terms of the burden of production (which party must produce evidence, such as an order accompanying the judgment, showing the grounds of dismissal) or in terms of an evidentiary presumption (whether the mere fact of dismissal suffices to presume the dismissal rested on section 1915(g) grounds). As a prominent treatise observes, "'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.'" KENNETH S. BROUN, ET AL., 2 MCCORMICK ON EVIDENCE § 342 at 495 (6th ed. 2006) (hereinafter "MCCORMICK"). Indeed,

confusing these two slippery cousins for one another is hardly surprising given that a presumption is most precisely defined as "a rule that . . . shifts the burden of producing evidence." *Id*. at 496. Because of this functional similarity, the considerations that justify the creation of a presumption are virtually identical to those that govern the allocation of the burden of production. *Id*. § 343 at 500–01. We thus need not dwell on nomenclature, so we will analyze this question in terms of the burden of production.

In allocating the burden of production, we first look to the statute itself. Where, as here, the statute is silent as to who bears the burden, we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer v. Weast*, 126 S. Ct. 528, 534 (2005). The default rule is, however, just that, and we may depart from it when considerations of fairness, convenience, or probability so require. *Id*. ("The ordinary default rule, of course, admits of exceptions." (citing MCCORMICK (5th ed.) § 337 at 412–15, which lists fairness, convenience, and the judicial estimate of the probabilities as considerations that may justify removing the burden of proof from the plaintiff)).

The default rule rests on two rationales, neither of which has any force in the context of an IFP motion. First, as a matter of formal consistency, the default rule reflects the longstanding notion that the burden of proof follows the burden of pleading. Hence, plaintiffs carry the burden on the elements of their cause of action, and defendants typically, though not always, carry the burden on affirmative defenses. This rationale does not apply in the IFP context because in their motions for leave to file IFP prisoners need not plead compliance with section 1915(g), as the government has conceded. *See* Oral Arg. at 36:30. The PLRA sets forth numerous pleading requirements for prisoners seeking IFP status—that they provide affidavits attesting to their

inability to pay, disclose their assets, and submit certified copies of their trust fund account statements, 28 USC § 1915(a)(1), (2)—but nowhere requires that prisoners plead compliance with section 1915(g). For that reason, we agree with the Ninth Circuit that had "Congress intended to require prisoners to affirmatively show that they were not subject to the three strikes provision, . . . it would have included that requirement in the list of requirements prisoners must address in order to obtain *IFP* status." *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). *Cf. Jones v. Bock*, 127 S.Ct. 910, 919 (2007) (concluding that, under the PLRA, prisoners need not plead exhaustion because, among other reasons, "[t]he PLRA dealt extensively with the subject of exhaustion, . . . but is silent on the issue whether exhaustion must be pleaded by the plaintiff or is an affirmative defense").

The default rule is also frequently justified on fairness grounds, i.e., foisting the burden on the defendant would be unfair given that the defendant is not "asking any favors of the court." 21B CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5122, at 394 (2d ed. 2005); *see also* MCCORMICK § 337 at 474. This concern over fairness to the defendant likewise makes little sense in the context of an IFP motion, which asks the court to exercise its discretion to forego prepayment of its *own* filing fee. Unlike defendants, courts can not be unfairly trapped by a failure of proof. If the court believes that a prisoner plaintiff is an abusive filer who has somehow evaded the three strikes provision due to a failure of proof, it has discretion to deny IFP privileges, thus preserving its own resources and those of the defendant.

Indeed, considerations of fairness, as well as convenience, recommend against placing the burden of production on prisoners seeking IFP status. Unlike government lawyers, prisoners often lack the ability to gather and store the records

necessary to show that past dismissals should not count as strikes. *See, e.g.*, *Andrews*, 398 F.3d at 1119–20 & n.9 ("In his current facility . . . [the prisoner] represents that he is permitted only six cubic feet of possessions—and that this not enough space to maintain comprehensive files . . . [The prisoner] also stated that he does not have access to PACER nor can he visit clerks' offices to obtain relevant orders."). To deny IFP privileges for potentially meritorious actions simply because the prisoner is unable to produce records that either the government defendant or the court itself could easily obtain seems quite unfair.

Our sense of the relevant probabilities also counsels against placing the burden of production on the prisoner. Although we have no doubt that a large percentage of prisoner complaints are dismissed on grounds of frivolousness, maliciousness, or failure to state a claim, we also suspect that many prisoner suits are dismissed for other defects, such as lack of jurisdiction (including sovereign immunity and standing), qualified immunity, and failure to exhaust administrative remedies, all of which (as we shall explain below) typically do not count as strikes. Further, given that section 1915A requires district courts to undertake a pre-docketing review of prisoner complaints and to dismiss any complaint found to be "frivolous, malicious, or [that] fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b), courts would most likely indicate whether those were the grounds for dismissal, thus reducing the probability that an unexplained dismissal rests on section 1915(g) grounds. This conjecture is borne out in the two dismissals the prisoners concede are strikes and in the Eleventh Circuit dismissal Charles Thompson claims is not a strike; in all three cases, the courts' finding of frivolousness appeared in the PACER docket report. Given this pattern, we think it improbable that cases dismissed for unexplained reasons were in fact dismissed on section 1915(g) grounds.

Finally, placing the burden on the party challenging the IFP motion should reduce the number of unexplained dismissals that are in fact strikes—thus minimizing for future courts the problem we face here. Courts and government agencies have both the incentive and experience to ensure that strikes are identified as such at the time of dismissal. Counting unexplained dismissals as non-strikes greatly increases the chance that courts will, where appropriate, take the relatively easy step of making clear that dismissals rest on section 1915(g) grounds, if not to preserve their own resources, then because government defendants will remind them to do so. By contrast, prisoner plaintiffs—even were they to bear the burden on this point in future litigation—are extremely unlikely to insist that the court make the grounds for dismissal clear in the docket report.

In sum, weighing considerations of fairness, convenience, and probability, we hold that prisoners moving for IFP status need not produce evidence showing the grounds for prior dismissals. Such evidence must be produced either by the defendant challenging the prisoner's IFP status or, when readily available, by the court itself. That said, we agree with the Ninth and Seventh Circuits that once such evidence has been produced, the ultimate burden of persuasion shifts back to the prisoner to explain why the past dismissals should not count as strikes. *See Andrews*, 398 F.3d at 1120; *Evans v. Ill. Dep't of Corrections*, 150 F.3d 810, 811–12 (7th Cir. 1998). Shifting the burden back to the prisoner will be especially helpful in those cases where the party challenging the IFP motion produces evidence of three or more strikes by one or more litigants with the movant's name, but where it is unclear whether all the cases involved the same individual. *See, e.g.*, *Butler v. Department of Justice* at *11–12. Presumably, prisoners are in the best position to resolve that sort of question.

How does all of this apply to *Michael Thompson v. Department of Justice*?  Recall that the only evidence of what happened in the district court is a single PACER docket report showing the case was dismissed, without a word on the grounds for dismissal.  Because the government produced no evidence capable of showing that the district court dismissed the case on section 1915(g) grounds, it does not count as a strike.

### *Appellate Affirmances of Strikes*

In 1994, the Eastern District of Missouri dismissed Michael Thompson's suit against the St. Louis County Police Department as "legally frivolous."  Michael Thompson then appealed to the Eighth Circuit, which summarily affirmed without explanation.

The government urges us to count an appellate affirmance of a strike as a second strike.  Section 1915(g)'s plain text, however, speaks only of dismissals, not affirmances. The choice of the word "dismiss" rather than "affirm" in relation to appeals was unlikely an act of careless draftsmanship.  Indeed, we think it most plausibly understood as a reference to section 1915(e)(2), which requires the court to "*dismiss* the case at any time if the court determines that . . . the action *or appeal* . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2) (emphasis added); *see also Jennings*, 175 F.3d at 780 ("Under the plain language of the statute, only a dismissal may count as strike, not the affirmance of an earlier decision to dismiss.").

For several reasons, it makes sense for Congress to have limited the statutory definition of strikes to dismissals rather than affirmances.  To begin with, an affirmance, even a summary affirmance, does not necessarily imply an independent judgment by the court of appeals that the appeal itself is

frivolous, but only that the district court correctly dismissed the complaint. Further, section 1915(e)(2) requires appellate courts to *dismiss* all frivolous appeals. Thus, given section 1915(e)(2)'s mandatory language, a decision to affirm rather than to dismiss implies a judgment that the appeal was not frivolous. To be sure, we can easily imagine a case in which an appellate court expressly states that an appeal was frivolous but erroneously styles its disposition as an affirmance rather than as a dismissal. In such a case, we expect the reviewing court would regard the earlier disposition as a constructive dismissal under section 1915(e)(2) and, therefore, as a strike. We face no such situation here. All three appeals lost by Michael Thompson were affirmances and in not one did the court state that the appeal was frivolous, malicious, or failed to state a claim. Thus, these three cases do not count as strikes.

### *Dismissals for Lack of Jurisdiction*

In 1998, the Eastern District of Missouri dismissed *Michael A. Thompson v. Department of Justice*, No. 98-0877 (E.D. Mo. Aug. 3, 1998), for lack of jurisdiction. In its brief, the government urges us to count this and other dismissals for lack of jurisdiction as section 1915(g) strikes. Doing so, however, would conflict with the statute's text, which counts as a strike only an action or appeal "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). Surely, there is nothing necessarily frivolous or malicious in bringing an action for which the court lacks jurisdiction. Equally clearly, a dismissal for lack of jurisdiction is not the same as a dismissal for failure to state a claim: in enacting section 1915(g), Congress chose to mirror the language of Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1).

Although at oral argument, the government wisely conceded that dismissals for lack of jurisdiction do not count as strikes within the meaning of section 1915(g), Oral Arg. at 44:24, it nonetheless argued that because courts have discretion to deny IFP privileges we should use that discretion to create a *per se* rule that counts dismissals for lack of jurisdiction as strikes. The government's proposal suffers from two serious flaws. First, because understanding federal court jurisdiction is no mean feat even for trained lawyers, creating a rule that mechanically treats dismissals for lack of jurisdiction as strikes would pose a serious risk of penalizing prisoners proceeding in good faith and with legitimate claims. Second, although we do have discretion to deny IFP privileges even when the PLRA does not so require, *see* 28 U.S.C. § 1915(a)(1); *Ibrahim v. District of Columbia*, 208 F.3d 1032, 1036 (D.C. Cir. 2000), we have no authority to pretend the PLRA says something it does not. To follow the government's suggested approach—using our discretionary authority to intermingle judge-made mandatory rules into the scheme created by Congress—would not only obscure which branch of government made the decision to deny a given prisoner IFP privileges, but would also leave the impression that we are attempting to improve on Congress's handiwork. As the Supreme Court recently warned: "'Whatever temptation the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better." *Jones*, 127 S. Ct. at 921 (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 533 (1947)).

The more transparent approach, we believe, is first to decide whether the PLRA requires us to deny IFP privileges and then, if it does not, "to examine the number, content, frequency, and disposition of [the prisoner's] previous filings to determine if there is a pattern of abusing the IFP privilege in his litigation history." *Butler v. Department of Justice*, No. 05-5171, at *10.

*Failure to Exhaust*

In the case Michael Thompson seeks to appeal here, the district court dismissed part of his complaint on a Rule 12(b)(6) motion because he failed to allege he had exhausted his administrative remedies under FOIA. Noting that in this and other cases courts have sometimes found that a Rule 12(b)(6) motion represents the appropriate procedural vehicle for disposing of a case in which the plaintiff fails to exhaust, *see, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003), the government argues that actions defeated by a failure to exhaust should generally count as strikes. Conversely, amicus for Michael Thompson argues that such actions should never count as strikes unless they are frivolous or malicious, pointing out that another part of the PLRA draws a sharp distinction between failure to exhaust and failure to state a claim. *See* 42 U.S.C. § 1997e(c)(2); *see also Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999).

We think both sides reach too far. Because there is no categorical answer to the question whether failure to exhaust administrative remedies counts as failure to state a claim for Rule 12(b)(6) purposes, the question likewise has no categorical answer under section 1915(g), the language of which Congress clearly modeled on Rule 12(b)(6). *Accord Millsap v. Jefferson County*, No. 03-1235, 2003 WL 23021406 (8th Cir. Dec. 23, 2003) (per curiam). As the Supreme Court recently put it: "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones*, 127 S. Ct. at 921.

Courts frequently treat failure to exhaust as an affirmative defense, *see, e.g*., *id*. at 919 (holding that the PLRA's exhaustion requirement for prisoner actions under 42 U.S.C. § 1983 is an affirmative defense). But if a particular statute requires the plaintiff to plead exhaustion and the plaintiff fails to do so, the court may dismiss the complaint on a Rule 12(b)(6) motion. Further, even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face. *See id*. at 921; *see also* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1357, at 708–30 (3d ed. 2004). When a court dismisses an unexhausted complaint under Rule 12(b)(6), thus concluding that the complaint fails to state a claim, section 1915(g)'s plain text compels us to count that case as a strike. In the majority of cases, however, in which failure to exhaust is treated as an affirmative defense and appears nowhere on the face of the complaint, the defense will not be raised on a Rule 12(b)(6) motion and the dismissal will not count as a strike. Similarly, if under the relevant statute (or the judicial interpretation thereof), an exhaustion requirement is jurisdictional, then the court will dismiss the unexhausted complaint pursuant to Rule 12(b)(1) and the dismissal will not count as a strike.

In addition to our obligation to adhere to section 1915(g)'s text, we are mindful that a driving purpose of the PLRA is to preserve the resources of both the courts and the defendants in prisoner litigation. Here, all agree that purpose is best accomplished by a bright-line rule that avoids the need to relitigate past cases. With regard to exhaustion, both section 1915(g)'s text and our desire for clarity point toward the same rule: if the court dismisses an unexhausted complaint on a Rule 12(b)(6) motion or if it dismisses the complaint *sua sponte* and expressly declares that the complaint fails to state a claim, the dismissal counts as a strike. But if the court dismisses the

complaint on some other procedural mechanism, such as a Rule 12(b)(1) motion or a motion for summary judgment, the dismissal will not count as a strike. Although we have no occasion to decide the issue, we expect a similar approach should apply with respect to other grounds for dismissal (such as statute of limitations defenses) that different statutes treat alternately as affirmative defenses, elements of the plaintiff's cause of action, or jurisdictional prerequisites. Finally, it bears repeating that IFP motions present no occasion for relitigating final judgments. Thus, even though a court may believe that a previous court erred by dismissing an unexhausted complaint under Rule 12(b)(6) or by failing to do so, all that matters for the purpose of counting strikes is what the earlier court actually did, not what it ought to have done.

Because the district court in this case expressly stated that Michael Thompson's failure to plead exhaustion under FOIA meant that he had failed to state a claim, we would ordinarily count the dismissal as a strike. In this case, however, we will not do so because, as noted above, (1) a dismissal does not become a strike until an appeal thereof has been resolved or waived, neither of which has yet occurred here, and (2) Michael Thompson had another claim that the district court disposed of on a Rule 12(b)(1) motion.

### *Section 1915A Dismissals*

In the *Veterans Service Board* case, the district court dismissed Charles Thompson's complaint pursuant to its mandatory section 1915A review, which requires courts to "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court, however, never said that it found the

complaint to be frivolous, malicious, or that it failed to state a claim. Instead, invoking separate authority to raise such issues *sua sponte*, the court determined that one of Charles Thompson's two claims was time-barred and the other barred for lack of standing.

The government urges us to treat all section 1915A dismissals as presumptive strikes. We decline to create such a presumption because, for a variety of reasons, a complaint that is neither frivolous, malicious, nor fails to state a claim could nonetheless be dismissed pursuant to section 1915A review. To begin with, section 1915A requires dismissal of complaints that "seek[] monetary relief from a defendant who is immune from such relief"—a reason not covered by section 1915(g). Also, courts may use the occasion of section 1915A review to dismiss on grounds listed in neither section 1915A nor section 1915(g)—just what happened in the *Veterans Service Board* case in which the court dismissed part of the complaint for lack of jurisdiction. In any event, even were there a presumption that section 1915A dismissals count as strikes, Charles Thompson would have overcome that presumption by showing that one of his claims was dismissed for lack of jurisdiction—a ground not listed in section 1915(g).

## IV.

In sum, we find that Michael Thompson has one strike and Charles Thompson has two. Thus, section 1915(g) presents no bar to our granting IFP privileges to either prisoner.

This leaves the question whether we should—as the government urges—nonetheless exercise our discretion to deny them IFP privileges. In making this determination, we "examine the number, content, frequency, and disposition of [the prisoner's] previous filings to determine if there is a pattern of

abusing the IFP privilege in his litigation history." *Butler v. Department of Justice*, No. 05-5171 at *10. As to the number and frequency of filings, the record shows that prior to the instant matters Michael Thompson filed six actions and appeals over the course of roughly nine years and that Charles Thompson filed three over the course of one year. This pattern of filing falls substantially short of being abusive. *See Butler*, at *11–12 (denying IFP privileges for a prisoner that had filed at least twenty-five actions and appeals and at least eight over the course of the previous four years). As to the content and disposition of those filings, we again see nothing to suggest a pattern of abuse. Apart from the three cases deemed frivolous—for which the two prisoners will be held to account under section 1915(g)—these relatively routine matters were disposed of on a variety of grounds, none of which suggests either a lack of good faith or a disregard for judicial resources.

## V.

For the reasons stated above, we grant both motions for leave to proceed IFP. To provide guidance for future cases we summarize our holdings as follows:

- Section 1915(g) applies to actions and appeals, not individual claims. If at least one claim within an action or appeal falls outside section 1915(g), the action or appeal does not count as a strike.
- Section 1915(g) applies only to final dismissals. Dismissals do not count as strikes until an appeal has been either waived or resolved.
- The burden of producing evidence showing the grounds for past dismissals falls on defendants challenging IFP status. When such records are readily available, the court will produce them itself. The prisoner, however, bears the ultimate burden of

persuasion.

- Appellate dismissals pursuant to section 1915(e)(2)(B)(i)-(ii) count as strikes. Appellate affirmances do not count as strikes unless the court expressly states that the appeal itself was frivolous, malicious or failed to state a claim.
- Dismissals for lack of jurisdiction do not count as strikes unless the court expressly states that the action or appeal was frivolous or malicious.
- Dismissals for failure to exhaust administrative remedies count as strikes only when they come on a Rule 12(b)(6) motion or when the court dismisses the complaint *sua sponte* and expressly states that it fails to state a claim upon which relief may be granted.
- Dismissals pursuant to section 1915A screening do not count as strikes unless based on one of the grounds enumerated in section 1915(g).

*So ordered.*