**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRUCE KNAPPENBERGER, an
individual,
            *Plaintiff-Appellant,*

            v.

CITY OF PHOENIX, a political
subdivision in the State of
Arizona; DOES I-X; CORPORATIONS
A-Z,

            *Defendants-Appellees.*

No. 07-15774

D.C. No.
CV-06-02749-JWS

OPINION

Appeal from the United States District Court
for the District of Arizona
John W. Sedwick, District Judge, Presiding

Submitted November 20, 2008*
San Francisco, California

Filed May 26, 2009

Before: Alfred T. Goodwin, Andrew J. Kleinfeld and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Kathi Man Sandweiss, Kraig J. Marton, Phoenix, Arizona, for the the plaintiff-appellant.

Georgia A. Staton, Gordon Lewis, Eileen Dennis GilBride, Phoenix, Arizona, for the defendants-appellees.

## OPINION

IKUTA, Circuit Judge:

Bruce Knappenberger appeals from the district court's decision granting the City of Phoenix's motion for judgment on the pleadings and dismissing his § 1983 action against the Phoenix Police Department. Knappenberger alleges his early retirement from his job as a commander with the Phoenix Police Department amounted to a constructive discharge, and he was therefore deprived of both property and liberty without due process of law. Because Knappenberger has failed to allege facts which, if true, would establish that his retirement was involuntary, we affirm.

I

We review de novo a district court's judgment on the pleadings. *MacDonald v. Grace Church Seattle*, 457 F.3d

1079, 1081 (9th Cir. 2006). "Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995).

Based on the allegations in his complaint, Bruce Knappenberger began working for the Phoenix Police Department in 1973. He served as a commander with the department for thirteen years and was assigned to the department's Community and Patrol Services Bureau in 2003. In July 2004, the Professional Standards Bureau of the Phoenix Police Department notified Knappenberger that it would begin investigating allegations that Knappenberger had made sexually suggestive comments to a female officer and had also made unwelcome physical contact. After giving Knappenberger this notice, the police department transferred him to a duty commander position. In the meantime, police department investigators interviewed Knappenberger and other witnesses. In August 2004, the police department placed Knappenberger on administrative leave and assigned him to his home.

The police department completed its initial investigation in October 2004. In November, the police department provided Knappenberger with a copy of the report of the investigation and gave him 21 days to review and respond to its findings.

After reviewing the report, Knappenberger participated in two review hearings before the committee responsible for the investigation. In the first hearing, on December 2, 2004, Knappenberger alleged that the investigators used improper procedures, and submitted documentation to support this allegation. At a second hearing on December 15, 2004, the committee told Knappenberger that it had reviewed Knappenberger's claims and documents "and felt the information was simply Knappenberger's perception." Accordingly, the committee stated it would not revise the investigative report. It also informed Knappenberger that the police depart-

ment was going to implement a new rule that would allow the department to terminate employees who had committed the sorts of infractions for which Knappenberger was under investigation.

The day after this hearing, Knappenberger learned from Phoenix's employee benefits department that "he had to retire 19 months early in order to continue to receive his lifetime health insurance coverage." Although the import of this statement is not clear from the complaint, Knappenberger explained in his opening brief that he would lose his lifetime health insurance coverage if the police department terminated him, but would retain his benefits if he retired early. Because Knappenberger's wife had a history of breast cancer, Knappenberger "could not afford to lose the insurance coverage." Rather than running the risk of being terminated and losing his health coverage, he retired on December 17, 2004.

After retiring, Knappenberger filed an action in state court under 42 U.S.C. § 1983, alleging that Phoenix unconstitutionally deprived him of property and liberty interests without due process of law. Phoenix removed the action to federal court and filed a motion for judgment on the pleadings. The district court granted Phoenix's motion. Relying on our decision in *Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007), the court held that Knappenberger could not establish constructive discharge absent a showing of "intolerable or discriminatory working conditions." Because Knappenberger's complaint did not allege the existence of such conditions, the district court concluded that Knappenberger had not effectively alleged constructive discharge, and therefore had necessarily failed to allege a discharge that violated property or liberty interests protected by the Due Process Clause. On appeal, Knappenberger argues the district court adopted too narrow a definition of "constructive discharge."

II

[1] In order to survive a motion for judgment on the pleadings, Knappenberger's complaint must allege facts that, if

true, show that Phoenix took an adverse employment action that deprived him of a constitutionally protected liberty or property interest without due process. *See Daniels v. Williams*, 474 U.S. 327 (1986); *see also Bd. of Regents v. Roth*, 408 U.S. 564 (1972). Phoenix does not dispute that Knappenberger had a property interest in his employment.  Rather, Phoenix asserts that Knappenberger's complaint established only that Knappenberger voluntarily retired, and therefore failed to allege that Phoenix deprived him of a property or liberty interest. Knappenberger contends that his complaint adequately establishes that he was constructively discharged because the police department took actions that required him to choose between retirement or termination without health insurance.

**[2]** We have previously considered the question whether an employee's decision to retire or resign can constitute a constructive discharge for purposes of a § 1983 action, but only where an employee alleged he resigned due to intolerable working conditions. *See Huskey v. City of San Jose*, 204 F.3d 893, 901 (9th Cir. 2000). In *Huskey*, we held that an employee has suffered a constructive discharge where "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions," *Huskey*, 204 F.3d at 900; *cf. Wallace*, 479 F.3d at 626 (articulating this standard for a "constructive discharge" for purposes of the Uniformed Services Employment and Reemployment Rights Act); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (same under Title VII). Knappenberger's complaint failed to allege facts amounting to the type of constructive discharge considered in *Huskey* and similar cases.

**[3]** We have acknowledged, however, that an employee may demonstrate that the decision to resign or retire was involuntary under circumstances not involving intolerable or discriminatory working conditions. In *Kalvinskas v. California Institute of Technology*, 96 F.3d 1305 (9th Cir. 1996), a

long-time employee was effectively given a choice between retiring and receiving his pension or remaining employed but having the disability benefits he was receiving reduced to nothing. We held that, because "a reasonable person in [his] position would feel he had no choice but to retire," Kalvinskas's retirement was involuntary for purposes of ADEA's prohibition of retirement plans that require or permit involuntary retirement. *Id.* at 1308. We deemed Kalvinskas's choice to be involuntary not because of discriminatory or intolerable working conditions, but rather, because of the coercion inherent in the choice between retirement and a complete deprivation of income. *Id.*; *see also Lojek v. Thomas*, 716 F.2d 675, 683 (9th Cir. 1983) (suggesting an employee coerced into resigning could demonstrate he left his employment involuntarily).

[4] Our conclusion in *Kalvinskas* that an employee's reasonable decision to retire can amount to an involuntary retirement under some circumstances, and our willingness to consider employment claims based on a theory of coercion, is consistent with rulings in our sister circuits. The Third, Fourth, Eighth, Tenth and Eleventh Circuits have adopted a "duress or coercion" theory under which "a resignation may be found involuntary if, from the totality of the circumstances, it appears that the employer's conduct in requesting or obtaining the resignation effectively deprived the employee of free choice in the matter." *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992) (internal quotation marks omitted); *see also Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-28 (3rd Cir. 1999); *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (per curiam); *Parker v. Bd. of Regents*, 981 F.2d 1159, 1162 (10th Cir. 1992); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988); *cf. Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (noting that the constructive discharge concept was originally developed by the National Labor Relations Board to address situations in which employers coerced employees to resign). Accordingly, the district court's ruling that Knappenberger

could not establish he was deprived of a liberty or property interest because he did not allege he retired after facing "intolerable and discriminatory working conditions" was too limited; a retirement or resignation may be involuntary and constitute a deprivation of property for purposes of a due process claim in the absence of intolerable working conditions.

But even under a coercion theory, Knappenberger's complaint does not allege an involuntary retirement. It is the employee's burden to come forward with sufficient evidence to demonstrate that "a reasonable person in [his] position would feel he had no choice but to retire." *Kalvinskas*, 96 F.3d at 1308. In evaluating such claims of coercion, we determine voluntariness by an objective standard, rather than by the employee's purely subjective evaluation; reject cases in which the employee did have a choice, even if between comparatively unpleasant alternatives; and consider additional case-specific factors that cut against a finding of coercion, such as whether the employee was given an alternative to resignation or retirement, understood the choice, had a reasonable time in which to decide, or could select the timing of the retirement or resignation. *See, e.g.*, *Hargray*, 57 F.3d at 1568-70; *Angarita*, 981 F.2d at 1544.

**[5]** In this case, Knappenberger does not allege facts that, if taken as true, would meet this standard. His complaint alleges merely that he anticipated he would be terminated, and he resigned in order to retain his lifetime health insurance. According to Knappenberger's pleadings, the police department did not request his resignation or retirement or tell him he would be terminated. Knappenberger does not allege that he was required to make an on-the-spot decision. From the complaint, it is clear that he could and did choose the date of his retirement. Indeed, Knappenberger does not even allege that a termination would have been inevitable; he could have opted to continue his opposition to the department's investigation. Although Knappenberger perceived he had a choice between two unpleasant alternatives, such a choice " 'does not

of itself establish that a resignation was induced by duress or coercion . . . .' " *Hargray*, 57 F.3d at 1568 (quoting *Stone*, 855 F.2d at 174). In short, the allegations in Knappenberger's complaint do not support a claim that Phoenix's conduct deprived Knappenberger of free will in choosing to retire. *Id.* Therefore, we conclude that Knappenberger's complaint does not allege an involuntary retirement.

**[6]** In the absence of an involuntary retirement, the complaint fails to allege that Phoenix deprived him of either a property interest or a liberty interest in his employment. Accordingly, the district court did not err when it granted Phoenix's motion for judgment on the pleadings with respect to Knappenberger's due process claims.

### III

**[7]** Knappenberger also appeals the district court's denial of his right to amend his pleadings. We review a denial by the district court of a party's motion to amend the pleadings for abuse of discretion. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). Leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000) ("An order granting such a motion must be accompanied by leave to amend unless amendment would be futile.").

In this case, the district court denied Knappenberger's motion to amend his pleadings on the ground that such an amendment would be futile, in part because "it is undisputed that plaintiff voluntarily resigned in order to retain his lifetime medical insurance coverage, and thus cannot establish a claim for constructive discharge or deprivation of a property interest."

**[8]** Knappenberger did not allege any facts before the district court, or to us on appeal,[1] that could establish that a reasonable person in Knappenberger's situation would have felt deprived of free will in making the decision to retire. Phoenix had not yet decided to terminate Knappenberger, and Knappenberger does not allege that he was pressured into a decision to retire by his employer. Accordingly, the district court did not abuse its discretion when it held that Knappenberger could not cure the flaws in his pleadings. *See Lipton*, 284 F.3d at 1038; *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1293 (9th Cir. 1983).

**AFFIRMED**.

---

[1]On appeal, Knappenberger requests that we take judicial notice of the demand letter he filed with the City of Phoenix. However, he neither presented the letter to the district court nor even mentioned it in his pleadings. Knappenberger now claims the letter demonstrates how he would amend his admittedly sparse first set of pleadings. Even assuming such a document were judicially noticeable or had been properly presented to us, nothing in the letter would require us to reverse the district court's denial of leave to amend the pleadings on the ground that such an amendment would be futile.