# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW G. SILVA,
　　　　　*Plaintiff-Appellant,*

　　　　　v.

SARA DI VITTORIO; JAMES C.
MILLER; WILLIAM LUCAS; SCOTT
HATTEN; CORRECTIONS CORPORATION
OF AMERICA; ROB MCKENNA;
CHRISTINE O. GREGOIRE; HAROLD
CLARKE; JAMES THATCHER; MAGGIE
MILLER-STOUT; RICHARD HEWSON;
RAINVILLE; JOHN ARNOLD; LERCH;
WESTFALL; RENATE ARCHER; JOHN
FERGUSON; JOHN GAY; SAMUEL
ROGERS; NAPIER; MARY VERDUGO;
TRANS-COR CORPORATION,
　　　　　*Defendants-Appellees.*

No. 08-15620

D.C. No.
2:07-cv-01696-
JAT-ECV

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Submitted December 8, 2010*
Seattle, Washington

Filed September 26, 2011

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

18329

Before: Diarmuid F. O'Scannlain and Richard A. Paez,
Circuit Judges, and Virginia M. Kendall,** District Judge.

Opinion by Judge Kendall;
Dissent by Judge O'Scannlain

---

**The Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Andrew M. Jacobs and Robert A. Bernheim, Snell & Wilmer L.L.P, Tucson, Arizona, for plaintiff-appellant Matthew G. Silva.

Robert M. McKenna, Attorney General, and Andrea Vingo, Assistant Attorney General, Olympia, Washington, for the defendant-appellees.

**OPINION**

KENDALL, District Judge:

Matthew Silva ("Silva"), a Washington State prisoner, appeals the district court's sua sponte dismissal of his pro se civil rights action for failure to state a claim upon which relief may be granted. We have jurisdiction under 28 U.S.C. § 1291 to review the district court's order dismissing Silva's first amended complaint without leave to amend and, for the reasons set forth below, we reverse in part, affirm in part, and remand to the district court for proceedings consistent with this opinion. Specifically, we reverse the district court's order dismissing Silva's right to access the courts, retaliation, and state law conversion claims and we affirm the district court's order dismissing Silva's RICO claim.

## I.  BACKGROUND

### A.  Silva's Complaint

On September 4, 2007, Silva filed a pro se civil rights complaint against Washington Assistant Attorney General Sara

Olson, referred to on appeal as Sara Di Vittorio ("Di Vittorio"), and three Washington Department of Corrections ("WDOC") and Corrections Corporation of America ("Corrections Corporation") officials who work at the Florence Correctional Center ("FCC"), where Silva had previously been incarcerated. In his complaint, Silva sought relief under 42 U.S.C. § 1983 for alleged violations of his First and Fourteenth Amendment right of access to the courts. He also alleged supplemental state law claims for conversion and fraud. Along with his complaint, Silva moved to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).

The district court initially denied Silva's motion to proceed IFP, concluding that the Prisoner Litigation Reform Act's "three-strikes" provision barred his request to proceed IFP. *See id.* § 1915(g).[1] The PLRA precludes a prisoner from proceeding IFP if, on three or more prior occasions, he filed an action or appeal that was dismissed because it was frivolous, malicious, or failed to state a claim upon which relief may be granted. *Id.* Citing *Silva v. Washington*, No. 2:98-cv-00659-WLD (W.D. Wash. Sept. 22, 1998); *Silva v. Clarke*, No. CV-05-414-MWL, 2006 WL 3246499 (E.D. Wash. Nov. 8, 2006); *Silva v. Bush*, No. C06-984-JLR (W.D. Wash. Apr. 16, 2007); and *Silva v. Goddard*, No. CV-06-02289-JAT (D. Ariz. Mar. 27, 2007), the district court concluded that at least three of the prior actions Silva had filed in federal court had been dismissed as frivolous, malicious, or because they failed to state a claim. The district court further found that because Silva was not under imminent danger of serious physical injury, the sole statutory exception to the "three-strikes" rule did not

---

[1]Congress enacted § 1915(g) as part of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321, § 804(d) ("PLRA"). Section 1915(g) is commonly referred to as the "three strikes" provision. *See Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005) (explaining that, under § 1915(g) "[s]trikes" are prior cases or appeals that the plaintiff filed while a prisoner, and which were dismissed "on the ground that [they] were] frivolous, malicious, or fail[ ] to state a claim"). Pursuant to § 1915(g), a prisoner with three or more "strikes" cannot proceed IFP.

apply. *See* § 1915(g). Accordingly, the district court dismissed Silva's complaint without prejudice for failure to prepay the filing fee.

Silva moved to reconsider, arguing that two of the four cases the district court counted as strikes should not count against him because, at the time he filed his complaint, his appeals were still pending before this court. The district court agreed and granted Silva's motion to reconsider, vacated its earlier dismissal, and allowed Silva to proceed IFP.

As obligated under 28 U.S.C. § 1915A, the district court then screened Silva's complaint to determine whether he had a cognizable claim for relief. Without reaching the merits of Silva's claims, the district court dismissed Silva's complaint without prejudice because he had not used the district court's approved form for pro se prisoner complaints. The district court granted Silva leave to file a first amended complaint, warning him that if he did not follow the pleading requirements, "the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff."

## B.   Silva's first amended complaint

On January 16, 2008, Silva amended his complaint, this time suing Di Vittorio; Washington State Attorney General, Rob McKenna ("McKenna"); the Governor of Washington State, Christine Gregoire ("Gregoire"); a number of WDOC and Corrections Corporation officials; Corrections Corporation itself; and Trans-Cor Corporation, a prisoner transportation company (collectively "the Defendants"). In his first amended complaint ("amended complaint"), Silva reasserted his claim under § 1983 that the Defendants violated his First and Fourteenth Amendment right to access the courts and also alleged that the Defendants retaliated against him in violation of the First Amendment. Specifically, Silva alleged that as soon as he began pursuing civil rights lawsuits against prison officials, those officials began transferring him within and

among prison facilities in Washington and Arizona and confiscating and destroying his legal documents and materials. According to Silva's amended complaint, the Defendants' actions proximately caused at least six cases to be dismissed, and hampered his ability to report the officials' misconduct and to bring any future cases.

In his amended complaint, Silva also added a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Silva alleged that his transfer to, and housing in, the FCC violated the RICO statute, specifically contending that the Defendants engaged in numerous instances of "racketeering activity" in violation of § 1961(1), including kidnapping, mail and wire fraud, witness tampering, and seizure of legal documents. Finally, Silva alleged that the Defendants' seizure of his legal files constituted conversion.[2]

Again the district court screened Silva's amended complaint pursuant to § 1915A, this time reaching the merits. The district court concluded that Silva's amended complaint failed to state a claim upon which relief could be granted and dismissed the case with prejudice. Specifically, citing *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 404 (9th Cir. 1991), the district court determined that Silva failed to state a RICO claim because he failed to allege sufficient facts to establish a pattern of racketeering activity, he failed to allege an injury to his business or property, and because government entities cannot violate RICO. Additionally, the district court concluded that Silva's transfer to the FCC in Arizona did not constitute an act of "kidnapping" under § 1961(1).

As to Silva's right to access the courts claim, the district court stated that the right "is only a right to bring petitions or

---

[2]Unlike Silva's initial complaint, his amended complaint did not include a fraud claim.

complaints to the federal court and not a right to discover such claims or even to litigate them effectively once filed with a court." Because the factual allegations underlying Silva's access to courts claim were "targeted at his ability to effectively litigate his cases beyond the pleading stage" the district court determined that Silva failed to state a claim upon which relief could be granted.

The district court also found that Silva did not state a claim for retaliation because he failed to identify specific retaliatory acts carried out by specific defendants and failed to precisely describe his conduct that prompted the Defendants to retaliate against him. Finally, the district court concluded that, without the federal claims, it did not have diversity jurisdiction over Silva's claim for common law conversion because Silva failed to allege an amount in controversy in excess of $75,000. Stating that its "discretion to deny or grant leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint," and that the defects in Silva's amended complaint could not be corrected, the district court dismissed Silva's case without leave to amend.

## C. Silva's appeal

Silva presents three issues on appeal. First, he argues that the district court erred by dismissing his claim for denial of the right to access the courts. Despite the statement in his amended complaint that the Defendants "had a duty under [the First and Fourteenth Amendments] to facilitate the specified civil actions," Silva now acknowledges that prison officials have no affirmative duty to help him litigate his claims once they have been filed. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding that the Constitution does not require the State to "enable the prisoner to *discover* grievances, and to *litigate effectively* once in court") (emphasis in original); *Cornett*, 51 F.3d at 898 (the right to access the courts "requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action"). He

argues instead that prisoners have a right under the First and Fourteenth Amendments to litigate lawsuits challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials. According to Silva, this right extends beyond the filing of an initial pleading.

Silva also challenges the district court's dismissal of his retaliation claim. Silva contends that in dismissing this claim, the district court either ignored the allegations in his amended complaint that supported the claim or imposed an improperly high pleading standard. Finally, while Silva does not challenge the district court's dismissal of his RICO and state court conversion claims, he does contend that the district court erred by dismissing these claims with prejudice and without leave to amend.

In response, the Defendants contend that we need not reach the merits of Silva's appeal because the PLRA's "three-strikes" provision bars him from pursuing this appeal without prepayment of the filing fee. *See* § 1915(g). The Defendants therefore ask that Silva's IFP status be revoked and that his appeal be dismissed unless Silva prepays the full filing fee because, they argue, Silva has at least three prior dismissals that qualify as "strikes" under § 1915(g).[3] For support, the Defendants cite the same four dismissals initially relied on by the district court—*Washington*, *Bush*, *Clarke*, and *Goddard*—and add one more: *Silva v. King County*, C08-1447-RSM (W.D. Wash. Jan. 29, 2009).

While Silva admits that two of the five dismissals, *Washington* and *Clarke*, count as "strikes," he disputes that the

---

[3]If a defendant challenges a prisoner's ability to proceed IFP, "the initial production burden rests with the defendant[ ]." *Andrews*, 398 F.3d at 1120. Once the defendant makes out a prima facie case, however, the burden shifts to the prisoner to show that § 1915(g) does not apply. *Id*. at 1116.

other three count against him in this appeal. He argues that the most recent dismissal relied on by the Defendants, *King County*, cannot count against him because at the time Silva filed his notice of appeal in this case, the district court had not yet dismissed the *King County* lawsuit. As to the dismissals in *Bush* and *Goddard*, Silva argues similarly that the appeals of the two dismissal orders were still pending on March 14, 2008 when he filed this appeal, and therefore cannot count as "strikes" against him here.

## II. DISCUSSION

### A. The PLRA's "three-strikes" provision

**[1]** To determine whether Silva may proceed with this appeal without prepayment of the filing fee, we must interpret the "three-strikes" rule under the PLRA. *See* § 1915(g). Specifically, we must consider whether a district court's dismissal of a prisoner's case counts against the prisoner as a "strike" under § 1915(g) immediately upon the entry of the district court's order, or not until it becomes final, that is, after the prisoner has waived or exhausted his opportunity to appeal.

**[2]** As in all statutory construction, we "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990)). Section 1915(g) prohibits a prisoner from proceeding IFP if he is an unsuccessful frequent-filer or has a history of malicious or frivolous litigation:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds

that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

§ 1915(g). Section 1915(g) does not expressly state whether a prior dismissal of "an action or appeal" must be final before it can be considered a 'strike', but we think this conclusion is "fairly implied." *Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007). The dissent suggests that our reading of the statute assumes all district court dismissals under § 1915(g) were erroneous. But we assume nothing more than what is assumed by § 1291, which grants an appeal as of right from all final district court decisions. In other words, reading the statute otherwise would be a departure from the usual practice under the Federal Rules and would, in certain cases, "effectively eliminate our appellate function." *Id.*; *see* 28 U.S.C. § 1291 (granting an appeal as of right "from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court"); Fed. R. App. P. 3 (setting forth procedures for taking an appeal as of right). Congress's silence on this issue is "strong evidence that the usual practice should be followed. . . ." *See Jones v. Bock*, 549 U.S. 199, 212, 216 (2007) (interpreting another section of the PLRA and stating that "when Congress meant to depart from the usual procedural requirements, it did so expressly"). We therefore agree with Silva that a dismissal must be final before it counts as a "strike" for § 1915(g) purposes.

In so holding, we join the majority of circuits that have addressed this issue. In *Thompson*, the D.C. Circuit held that § 1915(g) only applies to final dismissals and that, accordingly, "[d]ismissals do not count as strikes until an appeal has been either waived or resolved." 492 F.3d at 440. The court acknowledged that "section 1915(g) nowhere expressly states that dismissals must be final to count as strikes." *Id.* at 432. It reasoned, however, that "[a] contrary rule would, within

those narrow set of cases in which the third strike is appealed, effectively eliminate our appellate function." *Id*. According to the court, "[h]ad Congress intended such an unusual result, we expect it would have clearly said so." *Id*.

In *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996), the Fifth Circuit held that dismissals under § 1915(g) "include only those for which appeal has been exhausted or waived." *Id*. at 388. The court stated that "[a]ny other reading of the statute poses a risk of inadvertently punishing nonculpable conduct." *Id*. at 387. Like the D.C. Circuit, the Fifth Circuit worried that "[a] hyper-literal reading of the statute might . . . bar a prisoner's appeal of an erroneous third strike, since the appeal would follow three prior dismissals." *Id*. at 388. Similarly, both the Tenth and Eighth Circuits have concluded that a dismissal does not count under § 1915(g) until the appeals process is completed. *Jennings v. Natrona Cnty. Det. Ctr. Med. Facility*, 175 F.3d 775, 779-80 n.3 (10th Cir. 1999); *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 953 (8th Cir. 2006) (holding that three of the plaintiff's prior "dismissals could not be counted as strikes when the district court cited them (or when th[e] appeal was filed), because [the plaintiff] had not yet exhausted or waived his appeals in those cases");[4] *see also Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (recognizing that the weight of authority holds that "when a district court has dismissed a suit in what could be a prisoner's third strike, the presumption would seem to be for the reviewing court to give that dismissal no weight as of

---

[4]*See also*, *e.g.*, *Krier v. Ray*, 341 F. App'x 295, 297 (9th Cir. 2009) (citing *Thompson*, *Campbell*, *Jennings*, and *Adepegba* in holding that the district court erred when it counted the plaintiff's underlying dismissal as a strike under § 1915(g)); *Nicholas v. Am. Detective Agency*, 254 F. App'x 116, 116 (3d Cir. 2007) (unpublished) ("A dismissal does not qualify as a strike for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights."); *Michaud v. City of Rochester*, 248 F.3d 1127, 1127 n.1 (1st Cir. 2000) (citing *Jennings* and *Adepegba* for the proposition that "dismissals by the district court should not be counted until after a petitioner has exhausted or waived his avenues of appeal").

yet"). Only the Seventh Circuit has held otherwise. *See Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002) (holding that a district court dismissal can count as a strike before the prisoner's appeal from the dismissal has concluded).[5]

We note that the legislative history of the PLRA also supports our reading of the statute. While it is clear that Congress enacted § 1915(g) to curb frivolous prisoner complaints and appeals, *see Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002) ("The PLRA filing fee provisions were enacted to deter the large number of frivolous inmate lawsuits that were 'clogging' the federal courts and 'draining' limited judicial resources"), the PLRA's reforms were "designed to filter out the bad claims and facilitate consideration of the good." *Jones*, 549 U.S. at 204. "Congress intended section 1915(g) only to penalize litigation that is truly frivolous, not to freeze out meritorious claims or ossify district court errors." *Adepegba*, 103 F.3d at 388; *see also Jennings*, 175 F.3d at 780. Thus, our reading of the statute "not only respects Congress' intent to curb meritless lawsuits, but ensures that meritorious lawsuits are not swept away in the process." *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (quoting 141 Cong. Rec. S146110-01, S14267 (daily ed. Sept. 29, 1995)) ("As chief sponsor of the PLRA, Senate Judiciary Committee Chairman Orrin Hatch made the following statement: 'I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised.' ").

**[3]** We must heed the Supreme Court's warning not to "depart from the usual practice under the Federal Rules on the

---

[5]In *Robinson*, the Seventh Circuit applied § 1915(g) "literally" and reasoned that once a case is dismissed, it must immediately be counted as a strike. 297 F.3d at 541. Like our sister circuits, we are not persuaded by the Seventh Circuit's approach, which could lead to the "unusual result" that prisoners' third strikes are not reviewable. *Thompson*, 492 F.3d at 432.

basis of perceived policy concerns." *See Jones*, 549 U.S. at 212 (holding that, despite legitimate policy reasons to the contrary, because the PLRA itself does not require prisoners to plead exhaustion, the normal pleading rules apply). Accordingly, we hold that a district court's dismissal of a case does not count as a "strike" under § 1915(g) until the litigant has exhausted or waived his opportunity to appeal. This means that a dismissal ripens into a "strike" for § 1915(g) purposes on "the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011);[6] *cf. Clay v. U.S.*, 537 U.S. 522, 525 (2003) (holding that, for purposes of 28 U.S.C. § 2255's one-year limitations period, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction").

Applying this rule to the three dismissals at issue here — *King County*, *Bush* and *Goddard*—we conclude that none count as a "strike" against Silva in this appeal. In *King County*, the district court dismissed Silva's case for failure to state a claim upon which relief may be granted and stated that the dismissal shall count as a "strike" under § 1915(g). The district court's order of dismissal, however, was dated January 29, 2009—over nine months after Silva filed his notice of appeal in this case. Thus, this dismissal did not take place on a "prior occasion" and cannot count against him here. *See Campbell*, 471 F.3d at 952-53 ("Section 1915(g) does not apply unless the inmate litigant has three strikes at the time he files his lawsuit or appeal"); *c.f. Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007) (holding that prisoners qualify for the "imminent danger" exception in § 1915(g) "based

---

[6]If a prisoner does not appeal a dismissal, the dismissal counts as a "strike" from the date when his time to file a direct appeal expired. *See Hafed*, 635 F.3d at 1175.

on the alleged conditions at the time the complaint was filed").

In *Bush*, the district court dismissed Silva's complaint without prejudice for failure to state a claim upon which relief may be granted and directed the clerk to count the dismissal as a "strike" under § 1915(g). Silva appealed the dismissal to this court and the district court certified that the appeal was not taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A). We affirmed the district court's judgment on November 19, 2007, and denied Silva's petition for rehearing on June 10, 2008. The record does not reflect whether Silva petitioned the Supreme Court for writ of certiorari. The district court's dismissal in *Bush* therefore ripened into a "strike" once the time for filing a certiorari petition expired—ninety days after we denied his petition for rehearing. *See* Supreme Court Rule 13.3. That was well after Silva took his appeal in this case. Thus, the dismissal does not count against Silva here.

For the same reason, the district court's dismissal in *Goddard* also does not count against Silva in this appeal. In that case, the district court dismissed Silva's complaint without prejudice for failure to state a claim and instructed the clerk to dismiss the case with prejudice and count the dismissal as a "strike" under § 1915(g) if Silva did not file an amended complaint. Silva then appealed. We affirmed the district court's order on November 6, 2008, eight months after Silva filed his notice of appeal in this case. Accordingly, this dismissal cannot count as a "strike" against him here.

**[4]** Because three of the five dismissals on which the Defendants rely were not final at the time Silva took this appeal, they cannot count against Silva in this case. We therefore reject the Defendants' request that we revoke Silva's IFP status, and we allow him to continue in this appeal IFP.[7]

---

[7]These dismissals, however, may count against Silva in future lawsuits or appeals.

## B.   Right of access to the courts and retaliation claims

We turn next to Silva's argument that the district court erred by sua sponte dismissing his right to access the courts and retaliation claims for failure to state a claim upon which relief may be granted. We review de novo a district court's dismissal of a case pursuant to § 1915A for failure to state a claim upon which relief may be granted. *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007). In reviewing a district court's decision to dismiss for failure to state a claim, we take as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). We construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weilburg*, 488 F.3d at 1205 (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984)); *see also Ramirez v. Galaza*, 334 F.3d 850, 854 (9th Cir. 2003) (noting that *pro se* pleadings must be construed liberally).

### i.   Silva's right of access to the courts claim

Silva first argues that the district court erred when it dismissed his right of access to the courts claim. Citing *Lewis*, 518 U.S. at 354 and *Cornett*, 51 F.3d at 898, the district court concluded that the right of access to the courts ends once a prisoner has brought his petition or complaint to the court and does not include the "right to discover such claims or even to litigate them effectively once filed with a court." Accordingly, the district court concluded that because Silva's allegations related to his ability to effectively litigate his cases beyond the pleading stage, Silva failed to state a claim. We disagree.

**[5]** Prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). Under the First Amendment, a prisoner has both a right to meaning-

ful access to the courts and a broader right to petition the government for a redress of his grievances. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (*overruled on other grounds by Shaw v. Murphy*, 523 U.S. 223, 230 n.2 (2001)). "In some instances, prison authorities must even take affirmative steps to help prisoners exercise their rights." *Id.*

**[6]** We have traditionally differentiated between two types of access to court claims: those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*. For example, in *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989), we explained that "a court must first determine whether the right of access claimant alleges . . . a denial of adequate law libraries or adequate assistance from persons trained in the law. Second, if the claims do not involve such an allegation, the court must consider whether the plaintiff has alleged an 'actual injury' to court access."[8] Two of our sister circuits have recognized this distinction as well. *See Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004); *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992).

**[7]** With respect to the right to assistance, the Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Lewis*, 518 U.S. at 355; *Wolff v. McDonnell*, 418 U.S. 539, 579-80 (1974); *Johnson v. Avery*, 393 U.S. 483, 490 (1969). The right to litigation assistance, however, is limited to the tools prisoners need "in order to attack their sentences, [either] directly or collaterally, and in

---

[8]*Sands* was overruled by *Lewis* to the extent that it did not require actual injury when a prisoner alleges inadequate assistance. *Lewis*, 518 U.S. at 351. Our distinction between assistance and interference claims, however, remains good law.

order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. Critical to the issue here, the right to legal assistance is also limited to the pleading stage.[9] *Id.* at 384.

In the interference line of cases, the Supreme Court has "held that the First Amendment right to petition the government includes the right to file other civil actions in court that have a reasonable basis in law or fact." *Snyder*, 380 F.3d at 290 (citing *McDonald v. Smith*, 472 U.S. 479, 484 (1985); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see also Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997)). This right does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from "erect[ing] barriers that impede the right of access of incarcerated persons." *John L.*, 969 F.2d at 235; *Snyder*, 380 F.3d at 291 ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference"). Thus, aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process, "to pursue legal redress for claims that have a reasonable basis in law or fact." *Snyder*, 380 F.3d at 291 (citing *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993)).

---

[9]We have explained that the "pleading stage," as that term is used here, does not encompass merely the complaint and the answer, but also includes the prisoner-plaintiff's "reply to an answer," his "reply to a counterclaim" and his "answer to a cross-claim." *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995). Thus, the "pleading stage" encompasses the preparation of a complaint *and* the preparation of any filings necessary "to rebut the State's arguments when a court determines that a rebuttal would be of assistance." *Id.*

We have recognized that prisoners' First and Fourteenth Amendment rights to access the courts without undue interference extend beyond the pleading stages. *See, e.g.*, *Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989) ("a defendant is deprived of due process if prison authorities confiscate the transcript of his state court conviction before appeal"); *DeWitt v. Pail*, 366 F.2d 682, 685 (9th Cir. 1966) ("When the efforts of a state prisoner to obtain an available appellate review of his conviction are frustrated by the action of penal officials, there has been a violation of the Due Process Clause of the Fourteenth Amendment"). Indeed, before the Supreme Court's decision in *Bounds*, when the right of access to the courts was understood only to guarantee prisoners a right to be free from interference, we held that the right to access the courts included "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence *or prosecute* court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir. 1961) (emphasis added).

**[8]** In *Lewis*, the Supreme Court limited the right of access to the courts to the pleading stage in cases involving prisoners' affirmative right to assistance. *See* 518 U.S. at 354. *Lewis* does not speak to a prisoner's right to litigate in the federal courts without unreasonable interference. Because the Supreme Court has not limited a prisoner's right of access to the courts to the pleading stage in this circumstance, we hold that prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials.

We disagree with the Defendants that *Cornett v. Donovan*, 51 F.3d 894 (9th Cir. 1995), controls this case. In *Cornett*, we held that "the constitutional right of access requires a state to

provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action." 51 F.3d at 898. The Defendants rely on *Cornett* for the proposition that *all* access to courts claims expire after the pleading stage. This reliance is misplaced primarily because *Cornett*, by its own language, only refers to claims involving library access and legal assistance, rather than active interference. Along the same lines, *Cornett* relied on Supreme Court cases involving assistance claims, not interference claims. *See generally id.* at 898-99. In *Cornett* we did not acknowledge—let alone discuss—access claims grounded in allegations of active interference. Accordingly, *Cornett* does not limit our ability to determine whether the right to pursue litigation efforts without active interference extends past the pleading stage, and we see no reason why such a right would not exist throughout a prisoner's litigation efforts.

[9] Having so held, we turn to the facts alleged by Silva, bearing in mind that we are to construe his allegations generously. *Weilburg*, 488 F.3d at 1205. In his amended complaint, Silva alleged that the Defendants repeatedly transferred Silva between different prison facilities in order to hinder his ability to litigate his pending civil lawsuits. Silva also alleged that the Defendants seized and withheld all of his legal files. Finally, Silva alleged an actual injury: that as a result of the Defendants' actions, several of his pending suits were dismissed. We therefore reverse the district court's order dismissing Silva's access to courts claim and remand for further proceedings consistent with this opinion.

### ii.   Silva's retaliation claim

Silva next argues that the district court erred by dismissing his retaliation claim. The district court concluded that Silva failed to identify specific retaliatory acts carried out by specific Defendants and failed to "describe precisely for what conduct he experienced retaliatory acts." Silva contends that to reach that determination, the district court either ignored

the allegations supporting his claim or imposed an excessively detailed pleading standard.

**[10]** Silva alleges that each of the Defendants violated his First Amendment right to petition the government for redress of grievances without retaliation. As discussed above, a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among those rights is the right to file prison grievances and the right to pursue civil rights litigation in the federal courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Because actions taken to retaliate against prisoners who exercise those rights "necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*. To state a claim for First Amendment retaliation, a prisoner must allege the following five elements: (1) a state actor took an adverse action against him (2) because of (3) the prisoner's protected conduct, and that the action taken against him (4) chilled the prisoner's exercise of his First Amendment Rights and (5) did not reasonably advance a legitimate correctional goal. *See id*. at 567-68.

Here, Silva alleges that Di Vittorio, McKenna, Gregoire, Clarke, Thatcher, Miller, Miller-Stout, Hewson, Rainville, Arnold, Lerch, Westfall, and Archer transferred Silva despite their knowledge that Silva possessed a number of boxes of files that included evidence he planned to use in proving government misconduct in pending cases and potential proceedings. He alleges that when he was transferred, the WDOC and Corrections Corporation defendants seized all of his legal files, which included sixteen boxes of documents, record evidence, legal books, and research notes. He also alleges that Di Vittorio, McKenna, Gregoire, Clarke, Thatcher, Miller, Lucas, Miller-Stout, Archer, Ferguson, John Gay, Samuel Rogers, Hatten, Napier, Verdugo, and Corrections Corpora-

tion repeatedly refused to address Silva's complaints and his requests for the return and inventory of his stolen files.

Silva further alleges that each of the Defendants engaged in the adverse actions described "in order to punish and retaliate against Silva for his efforts to expose their misconduct and law violations." Specifically, he alleges that the Defendants engaged in these actions to intimidate or threaten him, to prevent him from testifying against them in his pending cases or in any future proceedings, to conceal or destroy the records necessary to prove his claims, and to hinder his ability to communicate with law enforcement. Silva also alleges that the Defendants' acts did not reasonably advance a legitimate correctional goal.

**[11]** Silva's allegations, if taken as true, satisfy the pleading requirements of a retaliation claim. Silva alleges that prison officials "(1) arbitrarily confiscated, withheld, and eventually destroyed his property," *Rhodes*, 408 F.3d at 568, and transferred him to another correctional institution, "(2) because he (3) exercised his First Amendment rights to file prison grievances and otherwise seek access to the legal process, and that (4) beyond imposing those tangible harms, the [defendants'] actions chilled his First Amendment rights and (5) were not undertaken to advance legitimate penological purposes." *Id.* This is "the very archetype of a cognizable First Amendment retaliation claim." *Id.*; *see also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985) (recognizing a First Amendment right of prisoners to be free from prison transfers or reassignments made in retaliation for legal activities). Further, while Silva pled some of his retaliation-related allegations in other sections of his amended complaint, when read together, Silva's allegations are specific enough to state a claim. Thus, we find that Silva has pled sufficient facts to state a claim for retaliation and we reverse the district court's order as to that count and remand.

## C.    Silva's RICO and state law conversion claims

Having concluded that the district court erred in dismissing Silva's right of access to the courts and retaliation claims, the only remaining issue is whether the district court erred in dismissing Silva's RICO and state law conversion claims without leave to amend. As to his RICO claim, Silva argues that, had he been given leave to file a second amended complaint, he could have corrected his claim to conform with the district court's order. We review a district court's denial of leave to amend for an abuse of discretion. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir 2009); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

**[12]** Federal Rule of Civil Procedure 15(a)(2) provides that the district court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The PLRA does not bar district courts from granting leave to amend. *See Lopez*, 203 F.3d at 1130. Indeed, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). "Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (internal quotation marks omitted).

**[13]** Here, we agree with the district court that Silva failed to state a claim under RICO and that any attempt to re-plead this claim would be futile. Silva's RICO allegations center on the WDOC's alleged transportation of him against his will from his prison in Washington to the FCC in Arizona. The predicate acts Silva alleges include "kidnapping," "witness tampering," mail fraud, and wire fraud—all of which relate to the allegedly illegal transport. Even if the Defendants' transfer of Silva from Washington to the FCC violated his consti-

tutional rights to access the courts and to be free from retaliation, these acts do not qualify as predicate acts under § 1961(1), primarily because the Defendants broke no criminal laws when transporting Silva to the FCC. Not only does Silva's RICO claim fail to state a claim upon which relief may be granted, it is frivolous. The district court properly concluded that the deficiencies in Silva's complaint could not be cured by an amendment. We therefore affirm the district court's decision to dismiss Silva's RICO claim with prejudice and without leave to amend.

**[14]** Silva's state law conversion claim was predicated on the dismissal of all of Silva's federal claims. Because we have restored two of Silva's federal claims, and because the district court dismissed the state claim after declining to exercise supplemental jurisdiction, we remand for consideration by the district court whether it wishes to exercise its discretion to hear Silva's state claim with his reinstated federal claims. *See Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 715 (9th Cir. 2009) (vacating dismissal of state law claims after reinstating federal claims so that the district court could decide whether to exercise its supplemental jurisdiction over the state law claims).

## III.  CONCLUSION

For the foregoing reasons, we decline to revoke Silva's IFP status and we reverse the district court's order dismissing Silva's right to access the courts, retaliation and state law conversion claims, and we remand for proceedings consistent with this opinion. We affirm the district court's judgment as to Silva's RICO claim. Each party shall bear its own costs.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

O'SCANNLAIN, Circuit Judge, dissenting:

Matthew Silva, a Washington state prisoner, is no stranger to the federal courts. During his incarceration, he has filed at least fourteen actions in federal district court. He has succeeded in none of them, and at least four of his suits have been dismissed for failure to state a claim upon which relief may be granted. Undeterred, Silva filed this latest suit under 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights, which too was dismissed for failure to state a claim. Silva now seeks appellate review of that determination.

Throughout his many interactions with the federal courts, Silva has proceeded in forma pauperis ("IFP"). That is, he has never had to prepay a single administrative fee associated with his many federal filings. On appeal, Silva once again seeks to proceed IFP, a privilege which he is now clearly denied under the Prison Litigation Reform Act ("PLRA"). Nevertheless, the court today holds that Silva is free to proceed IFP, and that it should adjudicate the merits of his appeal. Because such conclusion flies in the face of the plain language of the PLRA, I would dismiss this appeal unless Silva prepays the appropriate filing fees. Thus, I respectfully dissent from the court's ruling to the contrary.

I

The PLRA creates a "three-strikes rule" for prisoners seeking to proceed IFP in bringing or appealing a civil suit in federal court. Specifically, the statute provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds

that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). There is no claim that Silva is in imminent physical danger. If he had three or more dismissals for failure to state a claim at the time he filed this appeal, he is simply barred from proceeding IFP.

## II

The majority disregards this clear statutory mandate. Instead, it observes that "[s]ection 1915(g) does not expressly state whether a prior dismissal of 'an action or appeal' must be final before it can be considered a 'strike.' " Maj. Op. at 18340. Although the statute does not state that a dismissal must become final in order to count as a strike, the majority opines that such a limitation is "fairly implied." *Id.* The majority's rationale for implying a finality limitation into section 1915(g) is unpersuasive.

## A

The majority is correct that section 1915(g) does not explicitly state when or whether a dismissal must become "final" in order to count as a strike. But that is precisely the point. The fact that the statute does *not* state that a dismissal must become "final" to count against the prisoner counsels that we look no further than the fact of *dismissal* when tallying strikes. The statute is patent on this point. *See* 28 U.S.C. § 1915(g) (stating that IFP status shall not be granted if, on three or more prior occasions, the prisoner has filed a claim that "*was dismissed*" (emphasis added)); *accord Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002) (Posner, J.). A strike is not contingent in any way on the case's subsequent appellate process, which is nowhere mentioned in section 1915.

Indeed, section 1915 contemplates only one contingency that is relevant to the inquiry here — whether "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Moreover, Congress has included express language in section 1915(g) indicating that this exception is the *only* event upon which a strike is contingent. *See id.* ("[i]n no event" is this court to grant IFP status to a prisoner once he has accumulated three strikes).

The majority's contrary approach transforms Congress's silence into an unspoken requirement of "finality" — indeed it mandates an assumption that *all* trial court dismissals under section 1915(g) were entered in error. Such an interpretation is both contrary to the ordinary and obvious meaning of Congress's language and without logical support. In short, the atextual reading advanced by the majority "has the anomalous result of allowing a prisoner to file, without payment, a frivolous appeal." *Robinson*, 297 F.3d at 541.

B

The majority further opines that to count a dismissal as a strike as soon as it occurs "would be a departure from the usual practice under the Federal Rules," and would "effectively eliminate our appellate function" in those cases where a third strike is being appealed. Maj. Op. at 18340 (citing Fed. R. App. P. 3). The majority implies that our "usual practice" to allow appeals of right is somehow thwarted by not automatically allowing a prisoner to appeal his third strike free of charge. But "the usual practice" of bringing an appeal under the Federal Rules includes paying the requisite filing fees. *See* Fed. R. App. P. 3(e). Indeed, proceeding IFP is itself an exception from the "usual practice under the Federal Rules." *See* Fed. R. App. P. 24(a) (governing requests for "*Leave* to Proceed in Forma Pauperis" (emphasis added)).

The PLRA regulates the applicability of that exception in the context of prisoners, not the "usual practice" of appellate

proceedings themselves. Indeed, the "unusual" result reached by the plain text of the PLRA is simply that once a prisoner has had three suits dismissed, he may no longer avoid having to prepay the normal filing fees associated with federal appeals. Adherence to this procedure no more "effectively eliminate[s] our appellate function," Maj. Op. at 18340, than does the requirement of filing fees in general. A prisoner may still appeal just as any other party may: by prepaying the appropriate fees.[1]

### III

The majority fails to appreciate the strain that its rule places upon the federal courts. Silva's case is a prime example. In his time in prison, he has filed no less than fourteen causes of action in various federal courts. Frivolous prisoner claims create inordinate pressure on the federal docket, and the course of Silva's repeated litigation is just one of many such examples. In fact, some 20,000 civil cases are brought each year by prisoners either alleging civil rights violations or challenging prison conditions. *See* Admin. Office of the U.S. Courts, *Judicial Business of the United States Courts* 145 (2010). By one estimate, nearly twenty percent of these cases are dismissed as frivolous, not to mention the almost forty percent that are dismissed because of a prisoner's failure to comply with court rules. *See* Bureau of Justice Statistics, U.S. Dep't of Justice, *Challenging the Conditions of Prisons and Jails* 20 (1994); *see also Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002) ("The PLRA filing fee provisions were enacted to deter the large number of frivolous inmate lawsuits that were 'clogging' the federal courts and 'draining' limited judicial resources.").

---

[1]Even if section 1915(g) were read to mandate IFP status in the limited instance where the dismissal being appealed constituted the third strike itself, such a case is not presented here, as Silva seeks to appeal a claim unrelated to those constituting his strikes.

The rule crafted by the majority will only make the situation worse. The finality rule that the majority imports into section 1915(g) would toll consideration of the dismissal of a frivolous suit until the case has mandated *and* the time for the prisoner to file a petition for a writ of certiorari has expired. *See* Maj. Op. at 18342-43. And should the prisoner actually file a petition for a writ of certiorari, the majority would toll consideration of the dismissal until the Supreme Court has denied the petition. *See id.* This is more than enough time for a prisoner to file quite a few lawsuits, all the while not having to prepay his fees as most litigants must.

## IV

It is undisputed that Silva had at least three prior civil actions that had been dismissed for failure to state a claim. I believe, therefore, that IFP status is inappropriate and that this appeal should be dismissed unless Silva pays the proper appellate fees.

Accordingly, I respectfully dissent.