NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 19 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBERT HWANG, Ph. D., an individual,

Plaintiff-Appellant,

v.

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA, LLC, a limited liability company,

Defendant-Appellee.

No.    22-16396

D.C. No. 3:20-cv-08551-SK

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted October 18, 2023
San Francisco, California

Before:  W. FLETCHER, NGUYEN, and R. NELSON, Circuit Judges.

Robert Hwang appeals the district court's grant of summary judgment for his

former employer, National Technology and Engineering Solutions of Sandia, LLC

("NTESS").  We review a grant of summary judgment de novo.  *MacIntyre v.

Carroll Coll.*, 48 F.4th 950, 954 (9th Cir. 2022).  We have jurisdiction under 28

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

U.S.C. § 1291, and we affirm.

1. To begin, we reject Hwang's argument that he pleaded a claim of constructive discharge. While Hwang alleges with specificity the working conditions he believed were intolerable, the choice he believed was coercive, and the reason he felt compelled to retire, each of which could support a claim for constructive discharge, he does not take the necessary next step and raise a constructive-discharge claim. We decline Hwang's invitation to find that references to a constructive discharge claim in case management filings could fix the absence of such a claim in the complaint.

2. But even if Hwang had pleaded a constructive discharge claim, the district court properly granted summary judgment for NTESS. "Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is clearly entitled to judgment as a matter of law." *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010). On appeal, Hwang alleges that he was constructively discharged under two theories: intolerable working conditions and coercion. Both fail.

First, to establish constructive discharge due to intolerable working conditions, an employee must show the employer intentionally permitted working conditions so intolerable that a reasonable person in the employee's position would have been compelled to resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016)

2

(federal law); *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1248-49 (1994) (state law). The working conditions must be so "severe" as to compel a reasonable employee to resign. *See Green*, 578 U.S. at 558; *accord Cloud v. Casey*, 76 Cal. App. 4th 895, 902 (1999) ("intolerable or aggravated").

Here, the evidence is not enough to create a genuine issue of material fact that intolerable working conditions existed. Hwang argues that by December of 2019, working conditions at NTESS had become intolerable. This claim is belied by his attempt to rescind his decision to retire. But even if it were not, Hwang's arguments are insufficient. Hwang tries to "weave unrelated and disjointed events together" into a pattern, but he does not show a "continuous pattern" of aggravating conditions or discriminatory conduct. *Turner*, 7 Cal. 4th at 1255. While he alleges that he faced discrimination including a racist comment, criticism of his posture and demeanor, and false accusations of missing meetings, these facts, even if true, are not enough to establish constructive discharge. *See, e.g.*, *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (finding no constructive discharge after a woman quit her job when, after complaining of sexual harassment, she received low performance ratings, was scheduled for bad shifts, and had to work at the same time as the alleged perpetrator). Hwang also complains that he was the only manager forced to work with a coach, he received a poor "Block 9" performance rating, and he was put on a Performance Expectation

Plan (PEP). But Hwang disputes neither that he received complaints about his behavior and management style in 2016 and 2019, nor that performance issues were raised with him in his year-end evaluations.

Second, under a coercion theory of constructive discharge, an employee must show that a reasonable person under the same circumstances would feel compelled to retire. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 941-42 (9th Cir. 2009). We consider "whether the employee was given an alternative to resignation or retirement, understood the choice, had a reasonable time in which to decide, or could select the timing." *Id.* at 941.

Here, Hwang argues that giving him only 24 hours to decide between working on a PEP plan, resigning, or appealing the decision was coercive, particularly because he could not get a timely answer on whether he would lose his benefits if he chose to contest his termination and was ultimately terminated. But Hwang opted to retire and even chose his retirement date, setting it for after he used his vacation days. Although we view the 24-hour time frame given to Hwang as potentially problematic, it is nevertheless not sufficient to show that Hwang did not have a real choice. *See Knappenberger,* 566 F.3d at 941-42 (a choice between "unpleasant alternatives … does not of itself establish that a resignation was induced by duress or coercion" (citations omitted)). In *Knappenberger*, for example, we considered a constructive discharge claim of an employee who chose

4

to retire after being given the choice to either retire early (and keep his lifetime health insurance) or be fired (and lose it). *Id.* at 939-42. We held that the employee did not establish that he was coerced or deprived of his free will, even though he felt he needed insurance because his wife had a history of breast cancer. *Id.* If those facts failed to show coercion, so do the facts here. Hwang was not forced to choose between retirement and termination, even though he alleges that he felt termination was inevitable.

3. Finally, the district court properly granted summary judgment on Hwang's retaliation claim under Title VII and California's Fair Employment and Housing Act (FEHA). Hwang argues that NTESS retaliated against him by refusing to accept his rescission of retirement. Hwang's decision to retire was accepted by NTESS the same day. NTESS's refusal to accept Hwang's attempt to rescind his retirement a month later was not an adverse action that "materially affect[ed] the compensation, terms, conditions, or privileges of [his] employment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000). Other courts have held that the "failure to accept the employee's rescission of [his] voluntary resignation is not an adverse employment action." *Featherstone v. S. California Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1163-64 (2017) (citation omitted) (collecting cases). We agree.

This evidence is also not sufficient to create a genuine issue of material fact

5

for retaliation under Title VII, which would require Hwang to establish that NTESS's refusal to accept his retirement rescission would deter a reasonable person from reporting discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**AFFIRMED.**